Douglas F. Cushnie
P.O. Box 500949
Saipan MP 96950
Telephone: (670) 234-6830
Facsimile: (670) 234-9723
E mail: abogados@pticom.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LAW OFFICE OF DOUGLAS F. CUSHNIE, a sole proprietorship, and DOUGLAS F. CUSHNIE, individually,<br><br>Plaintiffs,<br>v.<br><br>BANK OF HAWAII, and MARY ROE and JOHN DOE,<br><br>Defendants. | CIVIL ACTION NO. 07-0020<br><br>PLAINTIFF'S RESPONSE MEMORANDUM TO RULE 12(b)(6) MOTION<br><br>Date: September 20, 2007<br>Time: 9:00 AM<br>Judge: A. Munson |

## I. Introduction.

Defendants assert that Counts Two, Three, Six and Eight in the First Cause of Action are insufficiently pled, thereby failing to state claims upon which relief may be granted and subject to dismissal under Rule 12(b)(6) F.R.C.P. Defendant also asserts that claims for relief are not appropriate to the cause of action pled. Defendant's contentions are in error.

The basic requirement of pleading is set forth in *Trevino v. Union Pacific R.Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990).

> "The federal rules do not require a plaintiff to allege facts to establish his right to a judgment. All they require, with certain exceptions in Rule 9, none of which is applicable to this case, is a 'short and plain' - which is to say, nonlegalistic, nonjargonistic - statement of what his claim is. Fed R.Civ.P. 8(a)(2), 84;"

-1-

1       Defendant cites *In re Verifone Securities Litigation*, 11 F.3d 865 (9th Cir. 1993) for a headnote proposition that conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. That case involved pleading a cause of action under both federal securities laws and regulations and California fraud laws. As the majority pointed out, that was a "fraud on the market" case requiring specific allegations to establish the statutory claim. In other words, that case involves the special pleading type of situation that Rule 9 F.R.C.P. speaks to.

      In considering a Rule 12(b)(6) motion the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *North Star International v. Arizona Corporation Commission,* 720 F.2d 578, 580 (9th Cir. 1983); *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985) cert. den. 474 U.S. 1056, 108 S.Ct. 1120 (1988). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). Dismissal for failure to state a claim is proper only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved. *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir. 1985). Moreover, if the pleaded facts support any theory of recovery, even if it is not the theory named in the pleading, the motion must be denied. *Haddock v. Board of Dental Examiners,* 777 F.2d 462, 463 (9th Cir. 1985). Finally, dismissal is proper only if the deficiency cannot be cured by an amendment. *Kelson v. City of Springfield*, 767 F.2d 651, 656 (9th Cir, 1985).

      The "no set of facts" aspect of *Conley v. Gibson (supra)* has apparently been altered by the recent decision in *Bell Atlantic v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007). The court in determining an anti trust action held that there must be facts alleged that are plausible on their face to establish a claim. There is, however, serious question

whether the *Bell Atlantic* decision applies to anything other than an anti trust action. The Second Circuit, a month after *Bell Atlantic* was decided, considered a qualified immunity case involving conduct taken under anti-terrorism laws. The court in *Iqbal v. Hasty*, 490 F.3d 143, 153 (2nd Cir. 2007) entered into an intensive analysis of *Bell Atlantic*, and concluded that it did not mandate a heightened pleading rule for all cases. The court said the case set forth a flexible plausibility standard. This would require further factual development in some cases in order to render the claim plausible. Thus the *Bell Atlantic* decision did not significantly alter pleading standards. The Sixth Circuit in *Weisbarth v. Geauga Park District*, ___ F3d ___, 2007 WL 2403659 (6th Cir. 2007) also considered a Rule 12(b)(6) motion in light of *Bell Atlantic*. The court acknowledged the close analysis taken by the *Iqbal* court regarding the applicability of the *Bell Atlantic* decision. While determining that it was not necessary in that case to determine the applicability of *Bell Atlantic* to its facts, did note that eight of the district courts in its circuit followed the *Iqbal* analysis while one held that *Bell Atlantic* did not apply outside of the anti trust arena.

**II. Discussion.**

    **A.  Count Two (Conversion).**

Plaintiff's have pled in Count Two, First Cause of Action a statutory conversion claim under the Commonwealth version of the Uniform Commercial Code. Contained within Count Two at paragraph 16 is an allegation that the Bank of Hawaii (Bank) converted funds represented by checks containing fraudulent endorsements in violation of 5 CMC § 3419(1)(c). That provision provides that an instrument is converted when it is paid on a forged endorsement. Count Two, paragraph 15 realleges and incorporates all allegations in Count One. Count One, paragraph 8, alleges that "on various occasions [Guerrero] forged the endorsements on the checks payable...". Paragraph 7 of Count One alleges the checks were presented to the Bank and paragraph 8 of Count One alleges the

checks were cashed and funds paid to Guerrero.  This completes the allegations of forgery, and payment by the Bank on the forged instruments.  By statute, that conduct amounts to conversion.  As the following sampling of cases establish that is the rule under applicable provisions of the UCC.

New York has the same version of the UCC as the Commonwealth.  The Court of Appeals of New York held in *Mouradian v. Astoria Federal Savings and Loan, et al.*, 689 N.E.2d 1385, 1387, 667 N.Y.S.2d 340, 341 (1997) that: "Pursuant to UCC 3-419(1)(c), an instrument is converted when it is paid on a forged endorsement."  The court went on to hold that such liability is absolute, common law defenses being denied to the drawee bank.  In *Lawyers' Fund For Client Protection of the State of New York v. Manufacturers Hanover Trust Company*, 581 N.Y.S.2d 133 (Sup.Ct. 1992), Gunderman an attorney representing Marie Kless, received a check endorsed over to his client.  He took the check, forged Kless's signature and negotiated it at defendant bank.  The court stated:

> "MHT converted the check when it paid on the forged endorsement**.**  Uniform Commercial Code sec. 3-149(1)(c); [cite omitted] A rule of absolute liability applies in an action for conversion of an instrument by a drawee bank.  Uniform Commercial Code sec. 3-419(2), n. 4"
> (Page 134)

California has come to the same conclusion regarding negotiation of a forged endorsement being equivalent to conversion by the bank.  The court in *Oswald Machine & Equipment, Inc. v. Jonathan D. Yip, et al.*, 13 Cal.Rptr.2d 193 (Cal. App. 1992) was faced with an "unauthorized endorsement".  In the course of discussing liabilities the court noted that the UCC does not define "forgery".  It then went on to discuss the nature of forgery and referenced several jurisdictions and the term as defined in Webster's.  The court determined:

> "There is no substantial difference between an unauthorized endorsement and a forged endorsement, the result being the same in s far as concerns the passing of title. [cite omitted] As

> with a forgery, if a bank pay an instrument on a unauthorized endorsement, then it has exercised 'dominion and control over the instrument inconsistent with the rights of the owner, (resulting) in liability for conversion.' (2A West's U. Laws Ann. (1991) U. Com.Code, Off. com. 3 to § 3-419, p.341.)" (Page 1244)

In *Chilson v. Capital Bank of Miami, Florida*, 701 P.2d 903, 906 (Kan. 1985) the court discussed liability under law prior to the UCC. The court then went on to state:

> "Under the U.C.C. this same result is reached. K.S.A. 84-4-401 requires the drawee bank to recredit its customer's account if it pays on a check with a forged endorsement, or be liable to the intended payee in conversion. 84-3-419(1)(c)."

The U.S. District Court in Maryland in *Mid-Atlantic Tennis Courts, Incorporated v. Citizens Bank and Trust Company of Maryland*, 658 F. Supp. 140, 143 (D. Md. 1987) pithily summed up the applicable law.

> "It is axiomatic than an item is converted when it is paid on a forged endorsement, because the payment is made to one who has no good title."

The rule is the same in the handling of cashiers checks where either the purchaser of the check or the payee has a cause of action against the drawee bank for conversion if paid on a forged endorsement. *Jerman v. Bank of America*, 7 Cal.App.3d 882 (1970). The selling bank "contracted with the purchaser Jerman that the checks would be paid to the named payees. Since the checks were paid on forged endorsements, Bank of America has an undoubted liability to the purchaser of the checks directly - or to the named payees." *Id., 7 Cal. App. 3d at 887.*

The Bank at page 5 of its memorandum asserts that damages are limited by 5 CMC § 3419(2) to the face amount of the check. Damages under the UCC are not so limited. The UCC as codified at 5 CMC §4103(1) and (5) provides for damages in excess of those amounts where the bank has failed to exercise good faith in its dealings with the payee.

The Bank asserts that the allegation of negligent infliction of emotional distress

-5-

will not lie on the facts as pled.  This is basically because the conversion alleged is an intentional tort, the Bank citing Restatement of Torts (Second) of Torts § 222A(1), defining conversion.  Plaintiff agrees that negligent infliction of emotional distress will not lie as pled in paragraph 17 of the complaint.  Intentional infliction, is however, well pled.

The Bank contends, as it must, that conversion is an intentional tort.  The statutory liability imposed on the Bank by 5 CMC §3419(1)(c) is not a matter of proof under the standards of *Charfauros v. Board of Elections*, 1998 MP 16, 5 N.M.I. 188.  It is a statutory liability created by the UCC as adopted in the Commonwealth.  The intentional tort alleged to have been committed by the Bank forms a basis for liability for intentional infliction of emotional distress.  *Preisser v. Wielandt, et al.*, 62 N.Y.S. 890, 891 (1900); *State Rubish Collectors Ass'n v. Siliznoff*, 240 P.2d 282 (Cal. 1952); *Halio v. Lurie*, 222 N.Y.S.2d 759 (1961); *M.B.M., Inc. v. Counce,* 596 S.W. 2d 681 (Ark. 1980); *Nagy v. Nagy*, 258 Cal.Rptr. 787 (Cal. App., 1989); *Golden v. Dungan*, 97 Cal.Rptr. 577 (Cal.App. 1971).  In the case of an intentional or willful tort, the wrongdoer is responsible for the direct and proximate consequences of his act, without regard to his intention to produce the particular injury.  *Rogers, et al. v. Williard*, 223 S.W. 15, 16, 11 A.L.R. 1115 (Ark. 1920)

In examining the standards set forth in *Charfauros (supra)* it should be apparent that the nature of the intentional tort of conversion satisfies those standards.  Conversion is, of course, the polite civil law description of what the criminal law would style theft, or embezzlement, or robbery, or burglary, depending on the precise facts.  Is the Bank prepared to argue that theft or embezzlement of funds is not outrageous, that it is not intentional, that it should be tolerated in a civilized society.  One would hope not in light of criminal laws sanctioning such behavior.

**B. Count Three (UCC/Ordinary Care/Bad Faith.**

It is appropriate to again quote Judge Posner in *Trevino v. Union Pacific R. Co.*, 916 F.2d 1230 (7th Cir. 1990) regarding the standards of pleading under the federal rules.

> "The federal rules do not require a plaintiff to allege sufficient facts to establish his right to a judgment. All they require, with certain exceptions enumerated in Rule 9, none of which is applicable to this case, is a 'short and plain'- which is to say nonlegalistic, nonjargonistic - statement of what his claim is."

Plaintiff has pled in Count One a series of facts supporting a negligence claim. In Count Two facts are pled under statutory provisions that establishes a conversion occurs upon payment by a bank of an instrument under a forged endorsement, and that the Bank did just that. In Count Three the allegations are that the Bank failed to comply with the standards set forth in 5 CMC § 4103. These standards include at § 4103(1) the bank's non-disclaimable responsibility to act in good faith and exercise ordinary care, or limit damages for such lack or failure. Incorporated into Count Three are allegations in Count One. Those allegations include failure to notify the plaintiff that checks made out to plaintiff's were being negotiated by a third party (¶ 10, 12) failure to check signature cards (¶ 6, 10), and failure to investigate what was clearly an improper presentment which should have raised an odor of impropriety (¶ 11). See *Mott Grain Co. v. First National Bank and Trust Co. of Bismarck*, 259 N.W.2d 667, 671 (Iowa 1977); *Waukon Auto Supply v. Farmers & Merchant's Savings Bank*, 440 N.W.2d 844, 888 (Iowa 1987). Failure to ascertain the authority of an agent negotiating checks is a breach of reasonable commercial standards as a matter of law. *Gresham State Bank v. O&K Const. Co.*, 370 P.2d 726, 733 (Or. 1962); *Salsman v. National Community Bank of Rutherford*, 246 A.2d 162, 168 (N.J Super. L. 1968).

The case law is clear that the allegations establish a breach of the statutory standards in § 4103(1) and entitle plaintiff to damages. These damages flow from the failure of the Bank to follow reasonable commercial standards and failing to act in good faith thereby exposing plaintiff to loss of funds and exposure to third party liability from

the drawer of the checks, among other losses.

### C. Count Six (Breach of Federal Regulations).

The Bank has a single objection to two aspects of the allegations contained in this Count. The objection is that the federal regulatory provisions are not set out in detail, nor are the internal operating rules and regulations of the Bank set out in detail. The Bank has not provided any authority saying that each regulation violated must be set out in detail. 5 CMC §4103 requires compliance with all Federal Reserve regulations. They are not specifically delineated. Plaintiff has pled in accord with the statute. If a statutory pleading is not sufficient, then it is certainly incumbent upon defendant to explain what is so deficient that it cannot respond. Plaintiff's are alleging that conversion of checks by the Bank for a period of at least three years is a breach of 5 CMC § 4103, which incorporates Federal Reserve laws, regulations, letters, etc. To use even the *Bell Atlantic* standard, it is plausible that this conduct violates the laws and regulations recited in 5 CMC § 4103.

With respect to the Bank's own internal operating rules, how is it possible that any plaintiff can plead precisely what is violated without having access to such material. Access is only gained through discovery in the course of litigation. The point is, however, that the Bank knows what it is exposed to and can admit or deny as to its violation of its own rules and regulations, and plaintiff is then put on his proof to establish what has been breached. With respect to its own rules, which of necessity it must be familiar with, it may determine on the facts alleged whether it can admit or deny. The critical factor is that plaintiff has pled the facts upon which he relies in a short and plain fashion and they establish a claim.

A plaintiff need not specify in detail his legal theory granting recovery, but need only set forth the claim asserted and the grounds upon which it rests. If this count according the Bank meets only minimal requirements of pleading then discovery is

-8-

available.  *Di Domenico v. New York Life Ins. Co.*, 837 F.Supp. 1203, 1204 (M.D. Fla. 1993).

**D.  Count Eight (Breach of Criminal Provisions.**

Cutting quickly to the essence of the Bank's argument here, it states (Memo, p.7) that "Plaintiffs apparently intend to impose criminal sanctions upon the Bank through this lawsuit." That is not true. There is no prayer for such sanctions, thus such relief is not being requested and hence not available.

The count does allege a breach of criminal provisions as a basis for the tort of intentional infliction of emotion distress, or alternatively negligent infliction of emotional distress which is pled in that count.  It is plaintiffs position that breach of the criminal law, being of necessity intentional, forms a basis for  recovery of damages for the intentional infliction of emotional distress.   Criminal conduct by definition is outrageous and not to be tolerated in a civilized society.  If this were not so, why would the legislature choose to criminalize such conduct.   Just as an unlawful taking from another may be a civil tort of conversion and a crime of theft or embezzlement,  so can the conduct criminalized in 4 CMC § 6804 and 4 CMC § 6813(a) form the basis for a civil tort.  Cases from various jurisdictions beginning early in the 20th century bear this out. *Engle v. Simmons,* 41 So. 1023 (Ala. 1906); *Herman Saks & Sons v. Ivey,* 157 So. 265 (Ala. App. 1934); *Davidson v. Lee*, 139 S.W. 904 (Tex. App. 1911); *Shall v. Minneappolis, St.P. & S.S.M. Ry. Co.*, 145 N.W. 649 (Wis. 1914); *McGregor v. Barton*, 660 P.2d 175, 181 (Or. App. 1983); *Emden v. Vitz*; 198 P.2d 696 (Cal. App. 1948).

**Conclusion**

Based upon the foregoing and the complaint filed herein, plaintiffs request that the motion to dismiss filed by defendant be denied, or if granted in any particular, plaintiffs be permitted to amend their complaint.

Dated this 6th day of September, 2007.

Respectfully Submitted,

DOUGLAS F. CUSHNIE
Attorney for Plaintiffs

/s/
_____
DOUGLAS F. CUSHNIE

-10-