**Douglas F. Cushnie**
P.O. Box 500949
Saipan MP 96950
Telephone: (670) 234-6830
Facsimile: (670) 234-9723
E mail: abogados@pticom.com

**Attorney for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **LAW OFFICE OF** ) | CIVIL ACTION NO. 07-0020 |
| ) | |
| **DOUGLAS F. CUSHNIE,** ) | |
| a sole proprietorship, and ) | |
| **DOUGLAS F. CUSHNIE,** ) | |
| individually, ) | |
| ) | **PLAINTIFF'S MEMORANDUM** |
| Plaintiffs, ) | **IN OPPOSITION TO MOTION** |
| v. ) | **FOR PROTECTIVE ORDER** |
| ) | |
| **BANK OF HAWAII, and** ) | |
| **MARY ROE and JOHN DOE,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

### I. <u>Introduction</u>.

Defendant, Bank of Hawaii moves for a protective order barring plaintiffs from receiving any information relating to allegations contained in the first amended complaint concerning statements or documents relating to the conduct of bank employees in the forgery scheme alleged. The bank relies on 31 U.S.C. §5318(g), the Annunzio-Wylie Anti-Money Laundering Act, and related regulations at 12 C.F.R. §21.11(k) and 31

-1-

C.F.R. §108.18(e). It is plaintiff's position that the statute and regulations cited do not support the bank's motion for such a broad prohibition.

The statute reads in pertinent part at §5318(g):

> "(g)(1) In general–The Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation.
> (2) Notification prohibited.--
>     (A) In general.–If a financial institution, director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a government agency–
>         (i) the financial institution, director, officer, employee, or agent may not notify any person involved in the transaction that the transaction has been reported; and
>         (ii) no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee."

Subsection (3) provides immunity to a financial institution, its officers, etc., for the disclosure of such information.

The two applicable regulations are virtually identical, although formatted differently. Pertinent parts of 21 C.F.R. §21.11 read as follows:

> *(a) Purpose and scope.* This section ensures that national banks file a Suspicious Activity Report when they detect a known or Suspected violation of Federal law or a suspicious transaction related to a money laundering activity or a violation of the Bank Secrecy Act."

Section 21.11(c) provides for a Suspicious Activity Report (SAR) to be filed

-2-

where the bank detects or suspects a violation of Federal criminal law by (1) bank insiders, (2) where the violations aggregate $5000.00 or more and a suspect can be identified, (3) where violations aggregate $25,000.00 or more regardless of potential suspects, and (4) transactions involve potential money laundering or violate the Bank Secrecy Act.

## II. Discussion.

There does not appear to be any ninth circuit authority that would dispose of the issue presented. The eleventh circuit in *Coronado v. Bank Atlantic Bancorp, Inc.,* 222 F.3d 1315 (11th Cir. 2000), and the second circuit in *Lee v. Bankers Trust Co.,* 166 F.3d 540 (2nd Cir. 1999) have both addressed aspects of the issue posed, albeit on different fact basis. In both cases the suit concerned the divulging of financial information by the bank to the federal authorities. In *Coronado,* deposits and withdrawals from an account were suspicious and the information was disclosed per a grand jury subpoena. *Lee* presented a suit against a bank for defamation arising out of a SAR filing . In both instances the banks were held immune from suit. The portion of the statute at issue was §5318(g)(3). The analysis by each court, however, was different. This is discussed in *Whitney National Bank v. Karam*, 306 F.Supp.2d 678 (S.D. Tex. 2004). This case does not involve a suit against a bank for release of a SAR. It concerns the honoring of checks with forged endorsements.

First an issue regarding the statute itself and second, an issue concerning the

regulations need to be addressed by the defendant.

Taking the regulations first, they state in several sections quoted above that a SAR must be filed where there is a Federal criminal violation. The question here is, what is the federal criminal violation. The statute and regulations are obviously designed to interrupt money laundering arising out of transactions involving drugs, weapons and the like and thereby violating Federal criminal laws. The endorsement forgeries in this case are alleged to have taken place over a three year period. The bank either had no reason to report these transactions as suspicious, or if they did, the bank did nothing until they were contacted by plaintiffs. The bank, by denying access to the requested information, is either trying to avoid revealing its negligence, or alternatively the deliberate conduct of its employees. Unless the defendant points to Federal criminal violations that it has a duty to report, the statute and regulations should not apply.

Turning to the statute, it states that the restriction on disclosure of a SAR is to "any person involved in the transaction". The regulations do not contain this restriction. Clearly, third party defendant Guerrero was involved, as was the bank and various of its employees. The question is whether plaintiffs were "involved". As payee's on the checks that were negotiated a broad view of involved may include plaintiffs. But plaintiffs had no knowledge of the transactions and were not involved in check processing, paying or receiving funds. It thus behooves defendant bank to explain how plaintiffs were involved so as to restrict this information, including the production of the

SAR document itself.  Unlike the first issue raised, this issue has been addressed by a district court.  The case of *Weil v. Long Island Savings Bank*, 195 F.Supp.2d 383 (E.D.N.Y. 2001), cited by various other district courts, addressed various issues.  The case involved various alleged violations of Federal criminal law.  The court discussed (195 F.Supp.2d @388) whether the institution may reveal the SAR information to persons not involved in the reported transaction, noting an argument can be made that the statute is insufficiently specific in that regard.  The *Weil* court held, however, that a similar argument was made and rejected in *In re Mezvinsky*, 2000 Bankr. LEXIS 1067 (Bankr.E.D.Pa.Sept.1, 2000).  The court agreed with the *Mezvinsky* case and held that the regulations did not exceed the statute.   A plain reading of the regulations, however, do not contain the statutory restriction, and since that is the rule of statutory construction in this circuit, either the statutory restriction applies, or the regulations fall.  Plaintiff's ask this court to so hold.

The *Weil* court also addressed the issue of the effect of the discovery rules in the Federal Rules of Civil Procedure.  (195 F.Supp.2d @ 387).  The court quoting from *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) said "[T]o allow a federal regulation issued by any agency to effectively override application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority."  The *Weil* court then posed the issue of

whether 31 U.S.C. §5318(g) was specific enough to justify its intrusion into the federal rules governing discovery. It concluded that the statute was sufficiently specific. Plaintiff's request a ruling that §5318(g) is not sufficiently specific but is more like the general grant that the supreme court found wanting in *Chevron U.S.A., Inc., (supra)*. Discovery should be permitted.

The court in *Gregory v. Bank One Indiana, N.A.*, 200 F.Supp.2d 1000, 1002 (S.D. Ind. 2002) described the situation between the regulations and the statute as follows:

> "The Rule is narrower than the Act in its application but broader in its prohibition. It requires confidentiality only of SARs and their contents, not of other reports of suspicious activity, but it forbids all disclosures on SARs, not just disclosures to involved persons."

Notwithstanding the various rulings in the *Weil* case that seem to support restrictions on the divulging of SAR information, the court set forth a rule which has been followed in other district court cases. The court at page 388 states:

> "The privilege is, however, limited to the SAR and the information contained therein; it does not apply to the supporting documentation. 12 C.F.R. §563.180(d)(12) is silent as to the confidentiality of supporting documentation, but the legislative history expressly states that OTS takes the position that only the SAR and the information on the SAR are confidential under 31 U.S.C. 5318(g), not the supporting documentation." (Cites omitted). "The court notes that in some cases the supporting documentation could disclose the existence of an SAR and reveal the filing of an SAR, and thus thwarting the intent of the regulation. In most cases, however, the disclosure of supporting documentation would not reveal the filing of an SAR, and such documentation cannot be shielded from otherwise appropriate discovery simply because it has some connection to an SAR. This is especially true in a situation such as this one, where everyone apparently

knows that an SAR was filed."

The desire of the federal courts to restrict the discovery privilege is clear from comments in *Cotton v. Private Bank and Trust Company,* 235 F.Supp.2d 809 (E.D. Ill. 2002).

> "Nothing in the Act or regulations prohibits disclosure of the underlying factual documents which may cause a bank to submit a SAR. Furthermore, those underlying documents do not become confidential by reason of being attached or described in a SAR. For example, if a wire transfer of funds is described in a SAR as a suspicious activity the wire transfer transaction remains subject to discovery. Therefore, The better approach prohibits disclosure of the SAR while making clear that the underlying transaction such as wire transfers, checks, deposits, etc. are disclosed as part of the normal discovery process."

It may be noted that the court referenced *Dupre v. Federal Bureau of Investigation,* 2002 WL 1042073 (E.D. La. 2002) where the court ordered production of information found in one part of a SAR which provided a narrative description of plaintiff's transactions and communications with the bank involving the bad check in dispute.

The courts have noted two types of supporting documentation at issue regarding production of a SAR. First, factual documents which give rise to suspicious conduct and which must be produced in the ordinary course of business because they are business records made in the ordinary course of business. Second, documents representing drafts of SAR's or work product related to the SAR itself, which need not be produced. *Weil (supra)*; *United States v. Holihan*, 248 F.Supp.2d 179 (W.D.N.Y. 2003).

The defendant bank is making an effort to bar all discovery regarding its conduct relating to the forged endorsements. The case law does not permit this.

## **Conclusion**

Plaintiff's request that the motion be denied, or alternatively the bank be permitted to withhold only the SAR document itself and its drafts. All other documents must be produced.

Dated this 29th day of July, 2008.

                              Respectfully Submitted,

                              DOUGLAS F. CUSHNIE
                              Attorney for Plaintiffs

                                   /s/
                              DOUGLAS F. CUSHNIE   F108